Rel: June 26, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2025-0826

_____

## John Carl Harris III

### v.

## City of Gulf Shores

## Appeal from Baldwin Circuit Court
## (CC-24-1595 and CC-24-1741)

WINDOM, Presiding Judge.

John Carl Harris III appeals his convictions for operating a

business without a license, a violation of City of Gulf Shores Ordinance

No. 1508, Chapter 8, § 19, Code of Ordinances. Harris was convicted in

the Gulf Shores Municipal Court of two counts of operating a business

without a license. Harris appealed his convictions to the Baldwin Circuit Court for a trial de novo, and, after a jury trial, he was convicted of the violations. The circuit court sentenced Harris to 30 days in jail for each violation but suspended those sentences and ordered Harris to serve 12 months of probation. Additionally, the circuit court ordered Harris to pay a $500 fine for each violation. Harris filed a motion for a new trial, which was denied. This appeal followed.

The two charges stemmed from separate incidents in May and June 2024 in which Gulf Coast Rental Company ("GCRC") rented a golf cart to a customer for use in Gulf Shores. Harris, who was personally charged, owned a minority interest in GCRC and served as its vice president.

GCRC first applied for a business license with the City of Gulf Shores ("the City") in 2019. In its application, GCRC described its business as providing rentals of beach gear, coolers, baby strollers, umbrellas, and pack-n-plays. A separate 2019 application listed high chairs, body boards, and Polaris Slingshot vehicles. The City issued GCRC a business license, describing the company as a business engaged in the rental of recreational goods. GCRC thereafter applied for and

2

received annual renewals of its business license each year, including in 2024.

By April 2022, GCRC had been renting various items in Gulf Shores, including golf carts, for several years. Harris testified, however, that, because GCRC was uncertain whether a separate license was required for golf-cart rentals, a new application was submitted to the City in April 2022 seeking a business license specifically for that activity. The City denied the application, and GCRC thereafter initiated a civil action against the City, claiming that the denial of its application was arbitrary and capricious. GCRC continued to rent golf carts, reasoning that a separate license was not required.

In August 2022, the City filed its first complaint against Harris, alleging that GCRC was operating without a business license by renting golf carts. During a deposition in GCRC's civil action, a City revenue employee testified that a golf cart constituted "a recreational good" within the scope of GCRC's existing business license. The City subsequently dismissed its complaint against Harris.[1] GCRC then continued renting

---

[1]The reason behind the dismissal is unclear. Testimony referenced an offer to dismiss the charges if GCRC dismissed its civil action against the City.

golf carts to customers for approximately a year until the filing of the instant complaints, which were based on rentals that had occurred in May and June 2024.[2]

On appeal, Harris argues that the evidence was insufficient to sustain his convictions. Specifically, Harris contends that the City failed to establish that GCRC's rental of golf carts under its 2024 business license violated the municipal ordinance or that he could be held personally liable for those rentals.

The City, on the other hand, claims that the business license did not authorize GCRC to engage in rentals of golf carts. To supports its position, the City points to the fact that golf carts were not specifically included in the list of items to be rented in the license applications. The City also relies on the City's prior denial of GCRC's 2022 application for a license to rent golf carts.

> "'"In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in

---

[2]In August 2024, the City amended its Code of Ordinances by adopting an ordinance prohibiting commercial businesses from renting golf carts and low speed vehicles intended to be used on a street or public right of way in Gulf Shores.

a light most favorable to the prosecution."' <u>Ballenger v. State</u>, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting <u>Faircloth v. State</u>, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). '"The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt."' <u>Nunn v. State</u>, 697 So. 2d 497, 498 (Ala. Crim. App. 1997), quoting <u>O'Neal v. State</u>, 602 So. 2d 462, 464 (Ala. Crim. App. 1992). '"When there is legal evidence from which the [factfinder] could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the [factfinder], and, in such a case, this court will not disturb the trial court's decision."' <u>Farrior v. State</u>, 728 So. 2d 691, 696 (Ala. Crim. App. 1998), quoting <u>Ward v. State</u>, 557 So. 2d 848, 850 (Ala. Crim. App. 1990). 'The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is <u>legally</u> sufficient to allow submission of an issue for decision [by] the jury.' <u>Ex parte Bankston</u>, 358 So. 2d 1040, 1042 (Ala. 1978)."

<u>Gavin v. State</u>, 891 So. 2d 907, 974 (Ala. Crim. App. 2003).

The ordinance under which Harris was charged provided:

"It shall be unlawful for any person to willfully engage in any business within the corporate limits or within the police jurisdiction unless such person has been issued and holds a current business license that has not been revoked or suspended. Each day that person does business without such a license shall constitute a separate offense."

(C. 129.)

It is undisputed that GCRC had a business license issued by the City at the time of the incidents underlying the complaints. Accordingly,

5

under the plain language of the ordinance, Harris could not have been in violation of the ordinance based on GCRC's operation under that license. Nothing in the record supports the City's contention that GCRC was required to obtain a specialized license to rent golf carts or that it could engage only in the sale or rental of items specifically identified in its business-license application. Indeed, GCRC rented several items not expressly listed in its application. Moreover, nothing in the application indicates that the business description provided was intended to be exhaustive.

Nor did the City ordinances, at the time of the alleged violations, prohibit the rental of golf carts. Even if such a prohibition had existed, any prosecution would have been required to allege a violation of that specific ordinance and to prove its existence. See Ex parte Maxwell, 439 So. 2d 715, 716 (Ala. 1983) ("[I]t is well established that in a criminal prosecution for violation of a city ordinance the city must plead and prove the ordinance."). If the City did not intend for GCRC to rent golf carts pursuant to its business license, it could have suspended or revoked

6

GCRC's license or, as it ultimately did, enacted an ordinance prohibiting the practice.[3]

The City's argument that Harris's application for a business license specifically to rent golf carts -- an application the City denied -- demonstrates that such a license was required is unpersuasive. That fact is not dispositive of whether GCRC possessed a valid business license in compliance with the ordinance at the time of the rentals, and the City's denial of the application did not render the rentals a violation under the ordinance.

Therefore, the City failed to present a prima facie case that Harris operated a business without a license. For this reason, Harris's convictions are due to be reversed, and a judgment is rendered in his favor.[4]

REVERSED AND JUDGMENT RENDERED.

Kellum, Cole, Minor, and Anderson, JJ., concur.

_____

[3]This Court does not intend to convey that such action would be legally appropriate. Our statement attempts to convey only that, rather than charge Harris or GCRC with a violation, it could have pursued other avenues to address its concerns.

[4]Because of the reversible error, we pretermit consideration of the other argument raised by Harris on appeal.