TYSON, Judge.
The two-count indictment charged the appellant with the second degree burglary of the Roanoke OTASCO store in the possession of Bill Royston and the grand larceny of some thirty-one pistols, rifles, and shotguns of the value of $3,000.00, the property of Bill Royston. Also included in this indictment were James D. Roberts, Steve Mickle, and Larry Emmitt Melton.
The jury found the appellant “guilty as charged in the indictment” and the trial court found the appellant guilty of burglary in the second degree and set sentence at five years imprisonment.
Bill Royston of 410 Cannon Street, Roanoke, Alabama, stated he owned the OTAS-CO store, located at 43 Main Street in Roanoke. On the night of August 7-8,1978, he locked the premises upon closing and upon his return the following morning he found that “most of his guns, some knives, fishing reels, and a water cooler were missing.” He immediately notified the Roanoke police. Mr. Royston stated that an air conditioner window unit had been pushed from the wall and was sitting on the floor of the store.
Mr. Royston indicated that, together with his wife, he prepared an inventory of the missing weapons and found that eighteen pistols, five shotguns, and twelve rifles were missing from the inventory. He stated that these were listed by caliber, serial number, and action. A copy of this inventory was received in evidence. The value of these thirty-five weapons was placed at between $3,000.00 and $3,500.00. This inventory was prepared the following morning under Royston’s supervision on August 8, 1978, upon discovery of the burglary.
Mr. Royston stated that some of the weapons still had the price tags on them. He stated that he delivered a copy of the inventory to Chief Moore of the Roanoke Police Department. Royston further indicated that eighteen of these weapons were subsequently recovered by the Roanoke police and returned to him, along with the missing water cooler.
On cross-examination, Royston stated that only one-half of the guns were recovered, and that near the air conditioning unit, which was found on the floor of the store the next morning, a key to a safe deposit box was found. Examination of this key by the bank determined that J. D. Roberts was the owner. This was determined by presenting the key to Mr. Roy Reeves, President of the City Bank of Roanoke. Mr. Royston further indicated that neither the appellant, Jimmie Cummings, nor J. D. Roberts had been in his store “in quite some time.” Also found on the floor was a key chain which contained some keys belonging to J. D. Roberts.
Sherry Ann Neighbors stated she was secretary to the district attorney’s office in Randolph County in August, 1978. She stated that she began work on August 1 of that year and “within the first two weeks” of working there, the appellant, Jimmie Cummings, and Steve Mickle had come into the office, together with Steve’s wife, and asked for a warrant concerning some shootings. Upon examination of the warrant, she stated that the date appearing thereon was August 7, 1978.
*423 Jack O. Walker, Jr., stated he was an investigator for the Jackson County, Mississippi, Sheriffs Department. He stated that he had received an APR concerning a burglary of an OTASCO store in Roanoke, Alabama, and some missing guns.
On August 10, 1978, at approximately 11:00 p. m., Investigator Walker and other Jackson County officers pulled just outside the “Photofinish Lounge” on Highway 90, just outside of Pascagoula. Two white males drove up in a yellow 1968 Plymouth automobile, Alabama license tag No. DEMJ 653. The officers observed the two men go into the lounge and come back outside a few minutes later, whereupon a warrant was presented to the appellant, Jimmie Cummings, and his companion, Steve Mick-le. A confidential police informant had accompanied the appellant and his companions into the lounge, then outside, and Mickle then opened the trunk of the car. At this time the officers moved in and arrested Cummings and Mickle and found Larry Melton passed out, lying on the back seat. A total of eleven weapons were found in the trunk of the Plymouth automobile and photographs, State’s Exhibit Three-Seven, were made of the car, trunk area, and weapons. Also a water cooler was in the trunk and almost all of the weapons with OTASCO price tags on them appeared in new condition. An inventory of the weapons seized was made, which is as follows (R. 49):
“There was a Marlin Model 336, Serial Number AC32928, regulation 12 gauge, Serial Number 6907936, there was a Remington 30-06, Serial Number E7115842, a Winchester Model 9430-30, Serial Number 4335725, a Winchester Model 94 magnum, Model 9422 magnum, Serial Number F238916, a Harrington Richard Model 158 16 gauge, Serial Number A8209643, a Charter Arms 38 pistol, Serial Number 450390, an H & R Model 622, Serial Number AN76405, RG Model 6622 magnum, Serial Number IC293614, H & R 930, Serial Number A5770.”
Investigator Walker stated that, on August 14,1978, he turned over these weapons and the water cooler to Alabama Officer Traylor and Sheriff Thompson of Randolph County.
This arrest and seizure occurred on Thursday, and the following day the appellant, Jimmie Cummings, and Larry Melton were brought to the Pascagoula City Jail, and following a conversation with the officers waived extradition to Alabama.
Before questioning Cummings and Melton, Walker testified that he gave them a Miranda warning (R. 52), and that without any threats, coercion, intimidation, or inducement, the appellant orally admitted his participation in the burglary of the OTAS-CO store in Roanoke, Alabama, on August 7, 1978. Record page 54 is as follows:
“A. To start off, Mr. Cummings told us that he had worked in our area back during the summer, and this was checked out at (Lipp) [Litton] ship building. It was determined that he was employed on July 13th, 1978, and had terminated on August 1st of 1978.
“Q. Okay.
“A. Mr. Cummings stated to me that he had been on a three weeks drunk and had to come to our area with the other two gentlemen, that they had brought approximately twenty weapons to the Jackson County area, and I asked him did he go in the building, and he admitted that he had gone into the building and had taken some of the weapons.
“Q. And when you talk about the building, are you referring to the building—
“A. —the Otasco department store.
“Q. And he testified that he had gone into the Otasco store?
“A. Yes, sir, he was talking about that burglary, yes, sir.
“Q. And he testified he went in the store?
“A. Yes, sir, he did.
“Q. Did he say who else went in with him?
“A. There was a Larry Melton who is sitting next to him. He had gone into the store also and Steve Mickle was with him, but he was too drunk to get in, to get in through the hole, and he stayed outside and watched as lookout man.”
*424 On cross-examination, Investigator Walker stated that his confidential informant had purchased two guns from Cummings, Melton, Mickle and brought the two weapons to the Jackson County Sheriff’s Department. The numbers had checked with the Roanoke APR on the weapons.
Walker also stated that he asked Cummings if he wanted to make a written statement, to which Cummings replied that he did not, but did not mind talking about it. He stated that at the time the confession was given, no one was present but Larry Melton and the appellant, Jimmie Cummings. He stated that a day or two later Mr. Traylor and the Sheriff came and picked up the men and the weapons and took them back to Alabama. He further stated that the appellant, Jimmie Cummings, had admitted his participation in the burglary of the OTASCO store in Roanoke. He also stated that Steve Mickle had waived extradition to Alabama before he talked with Cummings and Melton. Tray-lor then identified by serial number and model number the eleven weapons recovered from the Plymouth automobile.
Alabama Bureau of Investigation Officer William Edward Traylor testified that, accompanied by Sheriff Thompson of Randolph County, he drove to Jackson County, Mississippi, and there received Jimmie Cummings, the appellant, Larry Melton, and Steve Mickle and brought them back to Randolph County. Traylor indicated that he brought back a total of seventeen weapons to Roanoke, which had been recovered by the Mississippi authorities, and which contained the OTASCO store tags in Roanoke, Alabama, and that these appeared to be in new condition. He stated he received these on August 14, 1978, from the Mississippi officers in Jackson County.
At the close of the State’s evidence, the appellant made a motion for an election on the part of the State and then moved, separately and severally, to exclude the evidence as to each count in the indictment. There was no exception to the oral charge of the court.
I
We have carefully examined this record and determined that the State of Alabama has made out a prima facie case as to each count. Behel v. State, 40 Ala.App. 689, 122 So.2d 537 (1960); Eason v. State, 48 Ala.App. 471, 265 So.2d 913 (1972); Thomas v. State, Ala.Cr.App., 335 So.2d 225 (1976); Cummings v. State, Ala.Cr.App., 356 So.2d 779 (1978).
Moreover, identity may be established by either direct or circumstantial evidence. Dentman v. State, 267 Ala. 123, 99 So.2d 50 (1957); Cummings v. State, supra.
II
Appellant contends that the State failed to establish the voluntariness of the appellant’s statement to Mississippi Investigator Jack O. Walker.
The record, however, discloses a full Miranda warning (R. 52), as required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
Further, the record adequately establishes the complete voluntariness of the appellant’s statement to Mr. Walker. This was properly inquired into by the trial court outside the presence of the jury before the predicate was again laid in the jury’s presence.
It is clear to this Court that no improper influence, threat, intimidation, inducement, or other coercive factors were made or offered to obtain the appellant’s statement. Thomas v. State, Ala.Cr.App., 373 So.2d 1149 (1979), affirmed, Ala., 373 So.2d 1167 (1979); Williamson v. State, Ala.Cr.App., 370 So.2d 1054, affirmed, 370 So.2d 1066 (1978), and authorities therein cited.
III
Appellant’s counsel also argues that the trial court erred by overruling a motion made during closing argument to the effect that the appellant did not effectively rebut any testimony of the State and cites us to Beecher v. State, 294 Ala. 674, 320 So.2d 727 (1975).
*425 In each of the cases cited by the appellant, however, the statement made by the prosecutor was to the effect that certain particular evidence was not contradicted by the defendant and the defendant was the only one to refute such evidence.
Such is not true of the record in the instant case, rather there were several witnesses who might have been used, but were not called. We cannot ascribe error to the situation presented by this record.
We have carefully examined this record and find same to be free of error. The judgment is therefore
AFFIRMED.
All the Judges concur.